IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 11-cv-00624-WYD-MJW

MHC MUTUAL CONVERSION FUND, L.P., on behalf of itself and all others similarly situated,

      Plaintiff,

v.

UNITED WESTERN BANCORP, INC.;
SANDLER O'NEILL & PARNTERS, L.P.;
FBR CAPITAL MARKETS & CO.;
SCOT T. WETZEL;
WILLIAM D. SNIDER;
GUY A. GIBSON;
MICHAEL J. MCCLOSKEY;
ROBERT T. SLEZAK;
LESTER RAVITZ;
DR. JAMES H. BULLOCK;
JEFFREY R. LEEDS;
BERNARD C. DARRE;
DENNIS R. SANTISTEVAN; and,
CROWE HORWARTH LLP,

      Defendants.

_____

**ORDER**
_____

THIS MATTER is before the Court on:  (1) Crowe Horwarth LLP's Motion To Dismiss Pursuant to Rule 12(b)(6) [ECF No. 50]; (2) Defendants United Western Bancorp, Inc., Scot T. Wetzel, William D. Snider, Guy A. Gibson, Michael J. McCloskey, Robert T. Slezak, Lester Ravitz, Dr. James H. Bullock, Jeffery R. Leeds, Bernard C. Darre, And Dennis R. Santistevan's Motion To Dismiss Plaintiffs' Amended Class Action Complaint Pursuant To Rule 12(b)(1) And 12(b)(6) [ECF No. 52]; and, (3) Defendants Sandler O'Neill & Partners, L.P. And FBR Capital Markets & Co.'s Motion To Dismiss

- 1 -

Plaintiffs' Amended Class Action Complaint [ECF No. 56].

## BACKGROUND

On August 11, 2011, MHC Mutual Conversion Fund, L.P. and Clover Partners, L.P. (collectively "the Plaintiffs"), filed an Amended Securities Class Action Complaint against the following defendants:  (1) United Western Bancorp, Inc. ("Bancorp"); (2) Scot T. Wetzel, William D. Snider, Guy A. Gibson, Michael J. McCloskey, Robert T. Slezak, Lester Ravitz, Dr. James H. Bullock, Jeffery R. Leeds, Bernard C. Darre, and Dennis R. Santistevan (collectively "the Individual Defendants"); (3) Sandler O'Neill & Partners, L.P. and FBR Capital Markets & Co. (collectively "the Underwriter Defendants"); and, (4) Crowe Horwath LLP.  The Plaintiffs allege violations under the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.*, Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, and the Securities and Exchange Commission's ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.

Bancorp, a now defunct corporation, was a unitary thrift holding company headquartered in Denver, Colorado until January 2011.  During all relevant times to this lawsuit, Bancorp operated United Western Bank as a wholly owned subsidiary.  Bancorp filed a registration statement[1] with the SEC which became effective on September 16, 2009.  On September 17, 2009, Bancorp held a public offering ("the offering") in which it sold 20 million shares of common stock at four dollars a share and made a profit of 80 million dollars.  In the five quarters subsequent to the offering, Bancorp recognized over 69 million dollars of "other-than-temporary impairment"

---

[1] A registration statement is a "[d]ocument containing detailed information required by the SEC for the public sale of corporate securities.  The statement includes the prospectus to be supplied to prospective buyers." BLACKS LAW DICTIONARY (9th ed. 2009).

("OTTI") in its securities, specifically, its collateralized mortgage obligations and mortgage-backed securities.  In the years prior to the offering, Bancorp had recognized a cumulative OTTI of only 5 million dollars.

After Bancorp's public offering, the United States Department of Treasury, Office of Thrift Supervision, conducted two examinations of Bancorp:  one on March 30, 2009, and a second on September 27, 2010.  Reports issued in connection with the examinations criticized Bancorp's model for determining OTTI and stated that it was not in compliance with Generally Accepted Accounting Principles.

On January 21, 2011, the Federal Deposit Insurance Corporation seized United Western Bank, Bancorp's wholly owned subsidiary.  On January 26, 2011, NASDAQ Stock Market, LLC, informed Bancorp that it would no longer list Bancorp's shares for trading as of February 2, 2011.  Bancorp filed an appeal and NASDAQ resumed over-the-counter trading of Bancorp's stock on February 2, 2011.  That day, Bancorp's stock closed at three cents a share, down from four dollars a share at the time of the offering.

MHC Mutual filed its original Securities Class Action Complaint on March 11, 2011 [ECF No. 1]. MHC Mutual and Clover Partners filed an Amended Securities Class Action Complaint on August 11, 2011 [ECF No. 46].  In their Amended Complaint, the Plaintiffs allege three claims under the Securities Act, two claims under the Securities Exchange Act, and one claim under SEC Rule 10b-5.  With respect to the Securities Act claims, the Plaintiffs allege that Bancorp's September 16, 2009, registration statement contained untrue statements of material fact.  With respect to the Securities Exchange Act and SEC Rule 10b-5 claims, the Plaintiffs allege that Bancorp's upper level employees made untrue statements of material fact with respect to Bancorp's financial

status.

On September 26, 2011, Crowe Horwath and the Individual Defendants filed Motions to Dismiss [ECF Nos. 50 and 52].  On September 27, 2011, the Underwriter Defendants filed their Motion to Dismiss [ECF No. 56].  The defendants' primary argument is that the Plaintiffs' claims fail because the Plaintiffs did not plead that Bancorp's statements regarding OTTI were objectively and subjectively false.

On March 8, 2012, the Plaintiffs voluntarily dismissed all claims against Bancorp [ECF No. 75].  On November 19, 2012, I held a hearing and heard arguments from all parties regarding the defendants' motions to dismiss.  Based on an analysis of the parties' filings and the arguments presented at the hearing, there are two issues before me:  (1) whether the determination of a security being other-than-temporarily-impaired is an opinion; and, (2) whether plaintiffs alleging a claim under the Securities Act, Securities Exchange Act, and/or SEC Rule 10b-5 which is based on an opinion, must allege that the opinion is objectively and subjectively false.

## ANALYSIS

### A.  Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6) of the FEDERAL RULES of CIVIL PROCEDURE

The defendants filed motions to dismiss pursuant to Rule 12(b)(6) of the FEDERAL RULES of CIVIL PROCEDURE.[2]  FED. R. CIV. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is

---

[2] The Individual Defendants filed their motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6).  However, the Individual Defendants offer no arguments as to why this case should be dismissed pursuant to Rule 12(b)(1).  Therefore, I will analyze their motion under the framework of Rule 12(b)(6).

legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks and citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007) (citation omitted).

In ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), I "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (citations omitted).  The plaintiff "must include enough facts to 'nudge[] [his] claims across the line from conceivable to plausible.'" *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory allegations are not sufficient to survive a motion to dismiss. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009); *see also Twombly*, 550 U.S. at 546 (2007) (The plaintiff's burden "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  General allegations "encompass[ing] a wide swath of conduct, much of it innocent" are insufficient to state a claim. *Robbins v. Okla. ex rel. Dep't Human Servs.,* 519 F.3d 1242, 1247 (10th Cir. 2008).

**B.  Plaintiffs' Claims**

### 1.  Claims under the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.*

The Plaintiffs' assert three different claims under the Securities Act.

**a. Plaintiffs' claim against the Underwriter Defendants, Crowe Horwarth, and the Individual Defendants except Dennis R. Santistevan, pursuant to § 11 of the Securities Act, 15 U.S.C. § 77k (Count II)**

Liability under the Securities Act is contingent on a defective registration statement.  Pursuant to 15 U.S.C. § 77k(a):

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue--
>
> (1) every person who signed the registration statement;
>
> (2) every person who was a director of (or person performing similar functions) or partner in, the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;
>
> (3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;
>
> (4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement, in such registration statement, report, or valuation, which purports to have been prepared or certified by him;
>
> (5) every underwriter with respect to such security.

The Plaintiffs allege that Bancorp's registration statement was "materially untrue and/or misleading and omitted to state other facts necessary to make the statements made not

misleading." Amended Compl. [ECF No. 46] p. 103, ¶ 237.  Specifically, the Plaintiffs'

allege that Bancorp's registration statement misrepresented and failed to disclose that:

> (1) considering available evidence, it could not reasonably
> be concluded that the impairment of Bancorp's non-agency
> MBSs [mortgage backed securities] and CMOs
> [collateralized mortgage obligations] was temporary;
>
> (2) they had failed to timely record OTTI charges and, as
> such, they materially understated Bancorp's OTTI expense,
> overstated the value of its investment securities, overstated
> its net income and misrepresented its regulatory capital;
>
> (3) their failure to timely record OTTI expense was in
> violation of GAAP, regulatory requirements and Bancorp's
> own stated policies;
>
> (4) the enormous discrepancy between Bancorp's recorded
> fair market value of its non-agency MBS available for sale
> (with a face value of about $47 million) and the ultimate sale
> price was due to its flawed OTTI methodology and the
> purported explanation for that discrepancy applied not just to
> those specific securities, but to virtually all of Bancorp's MBS
> and CMO;
>
> (5) the third-parties utilized for valuation of non-agency
> MBSs and CMOs were not truly "independent" since
> Bancorp had 'shopped around' for valuation providers which
> would supply more favorable valuations, i.e., which would
> not require recognition of additional OTTI;
>
> (6) the Company's internal controls were inadequate to
> prevent it from improperly reporting its impaired assets;
> [and,]
>
> (7) there was an additional, significant risk that the Bank's
> regulatory capital base was inadequate, or would soon
> become inadequate (even after the Offering), in light of the
> undisclosed other-than-temporary impairment of its assets.

Amended Compl. [ECF No. 46] pp. 27-28, ¶ 62.  The Plaintiffs argue that:  (1) the

Underwriter Defendants are liable under § 77k(a)(5) because "[t]he Underwriter

Defendants each served as an underwriter with respect to the Offering of Bancorp's

securities and each permitted its name to be included on the cover of the Registration

Statement as the underwriters" Amended Compl. [ECF No. 46], p. 104, ¶ 246; (2)

Crowe Horwarth is liable under § 77k(a)(4) because "Crowe Horwarth acted as

Bancorp's accountant/independent auditor and was named by consent as having

certified the Registration Statement, including Bancorp's financial results for the year

ended 2008" Amended Compl. [ECF No. 46] p. 105, ¶ 247; and, (3) the Individual

Defendants, except Santistevan, are liable under § 77k(a)(1) for Bancorp's false and

misleading registration statement because they signed or authorized the signing of their

name on the registration statement.

### b. Plaintiffs' claim against the Underwriter Defendants pursuant to § 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2) (Count III)

Pursuant to 15 U.S.C. § 77l(a):

> (a) In general. Any person who--
>
>   (1) offers or sells a security in violation of section 5 [15 USCS § 77e], or
>
>   (2) offers or sells a security (whether or not exempted by the provisions of section 3 [15 USCS § 77c], other than paragraphs (2) and (14) of subsection (a) thereof), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
>
> shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to

> recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

The Plaintiffs allege that the Underwriter Defendants are liable under § 77l(a)(2)

because they "were sellers, offerors and solicitors of purchases of the shares offered

pursuant to the prospectus (*i.e.*, the 'Registration Statement,' which, as alleged herein,

included a prospectus which is false and misleading for same reasons)." Amended

Compl. [ECF No. 46] p. 106, ¶ 253.

### c. Plaintiffs' claim against the Individual Defendants, except Dennis R. Santistevan, pursuant to § 15 of the Securities Act, 15 U.S.C. § 77o (Count IV)

Pursuant to 15 U.S.C. § 77o(a):

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12 [15 USCS § 77k or 77l], shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

The Plaintiffs allege that the Individual Defendants, except Dennis R. Santistevan, are

liable under § 77o(a) because they were "control person[s] of Bancorp by virtue of [their]

position as a senior officer, director and/or major shareholder . . . and had the power,

and exercised the same, to control the representations and actions of Bancorp and

cause it to engage in the violations of law complained of herein." Amended Compl. [ECF

No. 46] pp. 107-08, ¶ 261.  The Plaintiffs further allege that "[e]ach Individual Defendant

(except Santistevan) was provided with or had access to copies of the Registration

Statement and had the ability to either prevent its issuance or cause it to be corrected."

*Id.*

### 2. Claims under the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*

The Plaintiffs allege two claims under the Securities Exchange Act.

#### a. Plaintiffs' claim against Scot T. Wetzel, William D. Snider, and Dennis R. Santistevan pursuant to § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 (Count V)

Pursuant to 15 U.S.C. § 78j:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> \*   \*   \*   \*
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement[,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Pursuant to SEC Rule 10b-5:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  Rule 10b-5 "is coextensive with the coverage of § 10(b)." *SEC v. Smart*, 678 F.3d 850, 857 n.7 (10th Cir. 2012) (quoting *SEC v. Wolfson*, 539 F.3d 1249, 1256 n.11 (10th Cir. 2008)); *United States v. O'Hagan*, 521 U.S. 642, 651 (1997) ("Liability under Rule 10b-5, our precedent indicates, does not extend beyond conduct encompassed by § 10(b)'s prohibition").  Thus, the plaintiffs' SEC Rule 10b-5 claim is analyzed under the framework of § 78j[3] of the Securities Exchange Act.

In order for the plaintiffs to establish a violation under § 78j(b), they must prove that:  "(1) the defendant[s] made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make the statement not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant[s] acted with scienter, that is, with intent to defraud or recklessness; (4) [they] relied on the misleading statements; and (5) [they] suffered damages as a result of [their] reliance." *In re Level 3 Communs. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012).

Pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b), a heightened pleading standard applies to the first and third elements of a claim under § 78j(b). *Id.*  Thus, in order to defeat a motion to dismiss, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is

---

[3] Section 10b of the Securities Exchange Act is codified as 15 U.S.C. § 78j(b).  Thus, any reference to § 78j(b) is synonymous with § 10b of the Securities Exchange Act.

made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B).

The Plaintiffs allege that Wetzel, Snider, and Santistevan "disseminated and approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they made, not misleading." Amended Compl. [ECF No. 46] p. 108, ¶ 265.  The Plaintiffs further allege that Wetzel, Snider, and Santistevan employed schemes to defraud the defendants and "[e]ngaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs and the Exchange Act Class in connection with their purchases of Bancorp securities during the Class Period." *Id.* at p. 109, ¶ 266.

### b. Plaintiffs' claim against the Individual Defendants, except Dennis R. Santistevan, under § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a) (Count VI)

Pursuant 15 U.S.C. § 78t(a):

> Every person who, directly or indirectly, controls any person liable under any provision of this title [15 USCS §§ 78a et seq.] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 21(d) [15 USCS § 78u(d)]), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

In order to establish control person liability, a plaintiff must establish:  (1) a primary violation of the Securities Exchange Act; and, (2) "control over the primary violator by the alleged controlling person." *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245,

1270 (10th Cir. 2001) (citation omitted).  The Plaintiffs allege that the Individual

Defendants "acted as controlling persons of Bancorp within the meaning of § 20 of the

Exchange Act.  By virtue of their positions and their power to control public statements

about Bancorp, these defendants had the power and ability to control the actions of

Bancorp and its employees." Amended Compl. [ECF No. 46], p. 110, ¶ 272.

## C.  Other-Than-Temporary Impairment ("OTTI")

Each of the Plaintiffs' claims, except the "control person" claims, Counts IV and

VI[4], require the Plaintiffs to show that the defendants made an "untrue statement of

material fact."  The Plaintiffs rely on the plethora of statements made by Bancorp or its

employees regarding OTTI to satisfy that element of their claims.  Count II alleges that

Bancorp's registration statement was defective because it included untrue statements of

material fact regarding OTTI.  Count III alleges that the Underwriter Defendants are

liable for offering and selling Bancorp's shares via a registration statement that did not

accurately state Bancorp's OTTI.  Counts IV and VI allege that Bancorp's upper level

employees are liable for failing to control and prevent the alleged untrue statements

contained in the registration statement *i.e.*, statements regarding OTTI, and making

alleged misrepresentations themselves regarding Bancorp's OTTI.  Count V alleges that

Wetzel, Snider, and Santistevan employed manipulative devices *i.e.*, incorrect

statements regarding Bancorp's OTTI, to deceive the Plaintiffs in connection with their

purchase of Bancorp stock.

In their motions to dismiss, the defendants argue that because the determination

of OTTI is an opinion, the Plaintiffs must plead that the defendants' statements

---

[4] These are derivative claims:  their viability is contingent upon a violation of the Securities Act (Count IV) or the Securities Exchange Act (Count VI).

regarding OTTI were objectively and subjectively false.  Thus, the defendants' argument dictates that my initial inquiry is whether the determination of a security being other-than-temporarily impaired is an opinion.  The parties have not cited to a case squarely addressing this issue and I am not aware of any controlling case from the Supreme Court of the United States or the United States Court of Appeals for the Tenth Circuit. Thus, this is an issue of first impression.

In order to ascertain whether the determination of OTTI is an opinion, it is necessary to lay out the sequential process one goes through in making the decision that a security's impairment is other-than-temporary.  The first step is to determine whether a security is impaired.  To determine whether a security is impaired, one must ascertain the security's fair value.  A security's fair value is "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction." BLACKS LAW DICTIONARY (9th ed. 2009).  Once you have determined a security's fair value, the second step is to compare the security's fair value to its cost. "A [security] is impaired if the fair value of the [security] is less than its cost." *Financial Accounting Standards Board* ("FASB") *Accounting Standards Codification*, Topic 320, Sub-topic 10, § 35, ¶ 21.[5]   If a security is impaired, the third and last step is to determine whether the security's impairment is temporary or other-than-temporary. Because the securities at issue are debt securities *i.e.*, collateralized mortgage obligations and mortgage backed securities, there are three instances in which other-than-temporary impairment may occur:

---

[5] Effective July 1, 2009, the FASB issued the *FASB Accounting Standards Codification* which supercedes all prior FAS Standards and FASB Staff Positions regarding FAS Standards.  The *FASB Accounting Standards Codification* is "the source of authoritative generally accepted accounting principles (GAAP) recognized by the FASB to be applied by nongovernmental entities." *FASB Accounting Standards Codification*, Topic 105, Sub-topic 10, § 5, ¶ 1.

1.  "If an entity intends to sell the debt security (that is, it has decided to sell the security), an other-than-temporary impairment shall be considered to have occurred." *FASB Accounting Standards Codification,* Topic 320, Sub-topic 10, § 35, ¶ 33A.

2.  "If an entity does not intend to sell the debt security, the entity shall consider available evidence to assess whether it more likely than not will be required to sell the security before the recovery of its amortized cost basis (for example, whether its cash or working capital requirements or contractual or regulatory obligations indicate that the security will be required to be sold before a forecasted recovery occurs).  If the entity more likely that not will be required to sell the security before recovery of its amortized cost basis, an other-than-temporary impairment shall be considered to have occurred." *Id.* at ¶ 33B.

3.  "If an entity does not expect to recover the entire amortized cost basis of the security, the entity would be unable to assert that it will recover its amortized cost basis even if it does not intend to sell the security.  Therefore, in those situations, an other-than-temporary impairment shall be considered to have occurred.  In assessing whether the entire amortized cost basis of the security will be recovered, an entity shall compare the present value of the cash flows expected to be collected from the security with the amortized cost basis of the security.  If the present value of cash flows expected to be collected is less than the amortized cost basis of the security, the entire amortized cost basis of the security will not be recovered (that is, a credit loss exists), and an other-than-temporary impairment shall be considered to have occurred." *Id.* at ¶ 33C.

The defendants argue that the above-mentioned decision making process results in an opinion.  I agree.  The determination of OTTI reflects the entity's judgment regarding multiple factors.  A security's fair value takes into account market forces, market trends, and buyers' whims.  The United States Court of Appeals for the Tenth Circuit has recognized this and stated "[t]here is no universally infallible index of fair market value.  There may be a range of prices with reasonable claims to being fair

market value." *Rhodes v. Amoco Oil Co.*, 143 F.3d 1369, 1372 (10th Cir. 1998) (internal

quotations and citation omitted).  Further, in two out of the three situations in which a

debt security's impairment may be other-than-temporary, that determination hinges on

whether the entity "expects" to recover the security's amortized cost.  Such a

determination is dependent upon market forces, market trends, and unknown variables.

These facts lead me to the conclusion that the determination of whether a security's

impairment is other-than-temporary is far from objectively determinable.  A statement

regarding OTTI is an opinion; it is not a matter of objective fact.[6]  Having decided that a

statement regarding OTTI is an opinion, I now turn to the issue of whether the Plaintiffs

correctly pled their claim under the Securities Act, Securities Exchange Act, and SEC

Rule 10b-5.

**D. Proper pleading for a claim under the Securities Act of 1933, 15 U.S.C. § 77a,**
   ***et seq.*, Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, and the**
   **Securities and Exchange Commission's ("SEC") Rule 10b-5, 17 C.F.R. §**
   **240.10b-5, that is based on an opinion**

The defendants argue that because the Plaintiffs' claims are based on opinions

*i.e.*, statements regarding OTTI, they are required to plead that such opinions are

objectively and subjectively false.

The defendants rely on *Viriginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991),

and its progeny.  In *Virginia Bankshares*, minority shareholders sued a bank and its

---

[6] United States Courts of Appeals have held that similar determinations are opinions. *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 775 (1st Cir. 2011) (In analyzing a claim under § 77k of the Securities Act, the United States Court of Appeal for the First Circuit held that investment ratings are "inherently opinions and not warranties against error"); *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110-11 (2d Cir. 2011) (In analyzing claims under §§ 77k and 77l of the Securities Act, the United States Court of Appeals for the Second Circuit held that "[e]stimates of goodwill depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact . . . In other words, the statements regarding goodwill at issue here are subjective ones rather than 'objective factual matters'").

directors for allegedly violating § 78n(a)[7] of the Securities Exchange Act and for breach

of fiduciary duties owed to minority shareholders.  With regard to the claim under the

Securities Exchange Act, the plaintiffs alleged that the bank's directors solicited proxies

by means of false or misleading statements of material fact.  Specifically, the minority

shareholders alleged that in soliciting proxies, the directors falsely stated that the

minority shareholders were offered "high" value and a "fair" price for their shares. 501

U.S. at 1088.  The issue before the Supreme Court of the United States was:

> whether disbelief, or undisclosed belief or motivation,
> standing alone, should be a sufficient basis to sustain an
> action under § 14(a), absent proof by the sort of objective
> evidence described above that the statement also expressly
> or impliedly asserted something false or misleading about its
> subject matter.

*Virginia Bankshares*, 501 U.S. at 1095-1096.  The Supreme Court held that "disbelief or

undisclosed motivation, standing alone, is insufficient to satisfy the element of fact that

must be established under § 14(a)." *Id.* at 1096.  Thus, the Supreme Court in *Virginia*

---

[7] Pursuant to 15 U.S.C. § 78n(a)(1):

> It shall be unlawful for any person, by the use of the mails or by any
> means or instrumentality of interstate commerce or of any facility of a
> national securities exchange or otherwise, in contravention of such rules
> and regulations as the Commission may prescribe as necessary or
> appropriate in the public interest or for the protection of investors, to
> solicit or to permit the use of his name to solicit any proxy or consent or
> authorization in respect of any security (other than an exempted security)
> registered pursuant to section 12 of this title [15 USCS § 78l].

The United States Code of Federal Regulations ("CFR") further details the conduct that 15 U.S.C. §
78n(a)(1) proscribes.  Under 17 CFR § 240.14a-9(a):

> No solicitation subject to this regulation shall be made by means of any
> proxy statement, form of proxy, notice of meeting or other
> communication, written or oral, containing any statement which, at the
> time and in the light of the circumstances under which it is made, is false
> or misleading with respect to any material fact, or which omits to state
> any material fact necessary in order to make the statements therein not
> false or misleading or necessary to correct any statement in any earlier
> communication with respect to the solicitation of a proxy for the same
> meeting or subject matter which has become false or misleading.

*Bankshares* did not squarely address the issue that is presently before this Court.  A literal reading of *Virginia Bankshares* results in a clear understanding that subjective falsity *alone* is insufficient to establish a claim under the Securities Exchange Act when such claim is based on an opinion.  The Supreme Court neither stated that objective falsity *alone* is sufficient, nor did it state that objective *and* subjective falsity must be pled.

However, Courts have held that under *Virginia Bankshares*, plaintiffs asserting claims under the Securities Act, Securities Exchange Act, and/or SEC Rule 10b-5 that are based on opinions, must allege that the opinions are objectively *and* subjectively false. *Rubke v. Capitol Bancorp, Ltd*., 551 F.3d 1156, 1162 (9th Cir. 2009) (citations omitted) ("Because these fairness determinations are alleged to be misleading opinions, not statements of fact, they can give rise to a claim under *section 11* [sic] only if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading"); *Fait*, 655 F.3d at 110 ("However, when a plaintiff asserts a claim under section 11 or 12 based upon a belief or opinion alleged to have been communicated by a defendant, liability lies only to the extent that the statement was both objectively false and disbelieved at the time it was expressed"); *Freedman v. Value Health, Inc.*, 958 F. Supp. 745, 753 (D.Conn. 1997) ("Therefore, the Court concludes that plaintiffs do not state a cause of action with respect to an opinion statement unless they offer allegations that the statement was incorrect or misleading as to both its objective and subjective aspects"); *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1248, 1265 (N.D.Ca. 2000) ("In the case of a fairness opinion, then, the plaintiff must plead with particularity why the statement of opinion was

objectively and subjectively false"); *Wolfe v. Aspenbio Pharma, Inc.*, 2012 WL 4040344, *8 (D.Colo. 2012) (quoting *In re Sanofi-Aventis Secs. Litig.*, 774 F. Supp. 2d 549, 567 (S.D.N.Y. 2011)) ("Thus, 'to properly plead that such statements were materially misleading, Plaintiffs must allege with particularity provable facts to demonstrate that the statement of opinion is both objectively and subjectively false'").

Most recently, Judge Blackburn of the United States District Court for the District of Colorado, held that plaintiffs asserting claims under § 78j(b) of the Securities Exchange Act and SEC Rule 10b-5 which are based on an opinion, must allege that the opinion is both objectively and subjectively false. *Wolfe*, 2012 WL 4040344, *8. With respect to their § 78j(b) and Rule 10b-5 claims, the plaintiffs in *Wolfe* alleged that the defendants' statements regarding the results of a clinical trial were untrue and false. The plaintiffs based this allegation on retrospective testing of the clinical trial data. Judge Blackburn stated that "[i]interpretations of the results of various clinical studies . . . are essentially no different than opinions." *Id.* In that same paragraph, Judge Blackburn stated that in order for the plaintiffs to prevail on their § 78j(b) and Rule 10b-5 claims, they must "demonstrate that the statement of opinion is both objectively and subjectively false." *Id.*

I agree with Judge Blackburn and other Courts holding that plaintiffs asserting claims under the Securities Act, Securities Exchange Act, and/or SEC Rule 10b-5 that are based on opinions, must allege that the opinions are objectively *and* subjectively false. With that said, the Plaintiffs' 112 page Amended Complaint is void of any allegations that Bancorp's statements regarding OTTI were subjectively false *i.e.*, that Bancorp did not believe its statements regarding OTTI were true when they were made.

Further, Plaintiffs' counsel admitted in open court that the Amended Securities Class Action Complaint does not allege subjective falsity as to Bancorp's statements regarding OTTI.  Because the Plaintiffs' are required to allege objective and subjective falsity, and because the Plaintiffs have failed to plead subjective falsity, their claims should be dismissed.  Therefore, construing the Amended Securities Class Action Complaint in the light most favorable to the Plaintiffs, I find that the Plaintiffs fail to state a claim upon which relief can be granted.

## CONCLUSION

After careful consideration of the matters before this Court, I find that:  (1) the determination of a security being other-than-temporarily impaired is an opinion; and, (2) under governing law, a plaintiff asserting a claim under the Securities Act, Securities Exchange Act, and/or SEC Rule 10b-5 that is based on an opinion, must allege that the opinion is objectively and subjectively false.  Based on the parties' briefs and arguments in open court, and in light that the Plaintiffs' 112 page Amended Securities Class Action Complaint is devoid of allegations that the challenged statements regarding OTTI were subjectively false, I find that the Plaintiffs fail to state a claim upon which relief can be granted.  Accordingly, it is

ORDERED that Crowe Horwarth LLP's Motion to Dismiss [ECF No. 50], the

Individual Defendants' Motion to Dismiss [ECF No. 52], and the Underwriter

Defendants' Motion To Dismiss [ECF No. 56] are **GRANTED**, and the Plaintiffs' claims

are **DISMISSED WITH PREJUDICE**.

Dated:  December 19, 2012.


BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief U. S. District Judge